PEOPLE ex rel. DELAWARE & H. CO. et al. v. BOARD OF RAILROAD COM'RS et al.

(Supreme Court, Appellate Division, Third Department. May 6, 1908.)

1. RAILROADS—LOCATION—PUBLIC CONVENIENCE AND NECESSITY.
Where a proposed railroad 90 miles in length passes through a territory 30 miles in length which is without railroad accommodations, and where public convenience and necessity calls for a road, and it is necessary, in order to make the road a paying enterprise, to make connections with a large terminal point, the mere fact that for part of the distance other lines parallel the proposed road is not ground for refusal to issue a certificate of public convenience and necessity.

2. SAME.
The fact that a proposed road, with contemplated through connections, will give the territory along its line the advantages of competition in transportation of coal and merchandise, is sufficient to warrant the issuance of a certificate of public convenience and necessity, especially where the facilities of the existing road are not sufficient to transport coal and merchandise offered for transportation without long delays.

3. CERTIORARI—REVIEW—SUFFICIENCY OF EVIDENCE.
On certiorari to review a decision of the Railroad Commissioners granting a certificate of public convenience and necessity for the building of a railroad, the question for determination is whether there was sufficient evidence to sustain the decision.

4. RAILROADS—REGULATIONS—STATE AND FEDERAL SUPERVISION.
The policy of the law placing railroad rates and facilities for transacting business under the direction of state and interstate commissions does not contemplate the doing away entirely with competition between railroads, by requiring existing roads to increase their facilities, rather than to allow competing roads to come in and take part of the business.

5. SAME—LOCATION—APPLICATION FOR CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—PROCEDURE—QUESTION OF GRADE CROSSINGS.
Railroad Law, Laws 1897, p. 794, c. 754, § 60, provides that steam surface railroads thereafter built must be so constructed as to avoid grade crossing where practicable, and that, where application is made under Laws 1895, p. 317, c. 545, § 59, for a certificate of public convenience and necessity preliminary to the building of a road, there shall be filed with the Board of Railroad Commissioners a map showing highways to

be crossed, and the board shall determine whether such crossing shall be under or over the proposed road, etc. Provision is made for a hearing at a time and place to be specified by public notice, when application is made to determine the manner of crossing, at which landowners in the vicinity of the crossing may be heard. *Held* that, while the number of grade crossings necessary upon the road is not without influence in determining the question as to public convenience and necessity of the road, the law does not contemplate that the final determination as to the manner of crossing the highways shall be made at the time that the certificate of public convenience and necessity is granted, but at some subsequent proceeding.

Certiorari by the people, on the relation of the Delaware & Hudson Company and another, to review a determination of the Board of Railroad Commissioners of the state of New York granting a certificate of public convenience and necessity to the Schenectady & Margaretville Railroad Company. Determination confirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

. Lewis E. Carr, for relators.

Edward J. Welch (John W. Griggs, of counsel), for respondent railroad company.

SMITH, P. J. The Schenectady & Margaretville Railroad Company has been made a party to this writ and is here responding. The writ was issued upon the application of the Delaware & Hudson Company and the Ulster & Delaware Railroad Company.

The respondent company is incorporated to build a road from Margaretville, in the county of Delaware, to the city of Schenectady, a distance of about 90 miles. From Grand Gorge to Margaretville, for about 19 miles, the road parallels the Ulster & Delaware Railroad Company. But this will not result in taking traffic from that company, as there are no places of any substantial size within this distance, and the parallelism is rendered necessary by the contour of the country, as both roads follow a valley between high hills. The northern part of the road, from Middleburg to Schenectady, parallels several roads at a greater or less distance therefrom, including the Schoharie & Middleburg road, the Schoharie Valley Railroad, and the Delaware & Hudson Railroad. From Middleburg to Grand Gorge, a distance of about 30 miles, there is no existing road, and for the convenience of the inhabitants of this region it is here conceded by the relators that public convenience and necessity call for a road. It is admitted, however, that a road between those two points would not be a paying enterprise. It must have some larger destination or connection. In order to give the convenience of a railroad through this 30 miles of territory, which is without railroad accommodation, it is necessary, therefore, to make connections with Schenectady. These other roads, therefore, each of which is parallel for part of the distance, should not be allowed for that reason to defeat the claims of this large territory which is without railroad accommodation. We have examined the evidence, and it is overwhelmingly in favor of the conclusion arrived at by the commissioners.

But this proposition is of larger scope than is indicated by the facts

above stated. It is boldly asserted that this road is contemplated as part of a through line from Schenectady, in the state of New York, to Wilkes-Barre, in the state of Pensylvania, thus entering the heart of the anthracite region, and furnishing another outlet for coal from that region. The Delaware & Eastern Railroad is a road already existing in the county of Delaware and running southerly from Margaretville. The road contemplated is in fact an extension of this road northerly to Schenectady. There is also contemplated an extension of the road from the southern terminus to the state line near Hancock; this southerly extension being the Hancock & East Branch Railroad, to which a certificate has already been granted, and the granting of which certificate is also before us for review at this term. This through line between Wilkes-Barre and Schenectady would be a competitor with the Delaware & Hudson Railroad Company in transporting coal and merchandise to the north and northeast. That would give to the public the additional advantage of competition in transportation. Both the advantage to those along the line of this new road, who are not now supplied with facilities for the procurement of coal, and also the advantage to consumers in the Eastern states, who would be reached through connection with the New York Central and Boston & Maine Railroads at Schenectady. This factor would seem in itself sufficient to warrant the issuance of this certificate. The counsel for the relator the Delaware & Hudson Railroad Company insists that the court will not authorize a new road to compete with an existing road and render its securities of less value. If this be so, which is not here conceded, it is answered by the evidence of the witness Lincoln. This witness, until 15 months prior to the hearing, was a division superintendent upon the Delaware & Hudson road. He swore to the effect that the facilities of that road were not sufficient to transport the coal and the merchandise offered for transportation without long delays, and that, by reason of the inability of that road to take care of the tonnage offered it for shipment, in his judgment there was a public necessity for the road in question. It is a significant fact that the relators put on a witness who swore to improvements that had been made, but no witness who attempted to swear that the road was able to handle the tonnage that was offered it for transportation over its road with any degree of expedition.

It is further strenuously insisted that, under the policy of this state and of the United States, rates as well as the facilities for transacting its business are under the direction of state and interstate commissions, and that, with this condition existing, the policy of the law should be to require the Delaware & Hudson to enlarge its facilities, rather than allow competing roads to come in and take part of its business. But this determination in the first place was made prior to the creation of the Public Service Commission in this state, and this examination here is under the rules governing a common-law writ of certiorari, and must stand or fall upon the question whether there was sufficient evidence to sustain it. People ex rel. Depew R. R. Co. v. Commissioners, 4 App. Div. 259, 38 N. Y. Supp. 528, 861. If we assume, for the argument, however, that this new policy of our state were to enter into the determination of this question, the Com-

mission might well have decided that with the tremendous increase of business in this country, and the tremendous increase of tonnage that is constantly offered for transportation, the public could be better served with two lines of railroad between Wilkes-Barre and Schenectady than with one, and that the business of the Delaware & Hudson would not suffer materially from such competition. I do not apprehend, however, that the adoption of the new policy in the state and nation is intended to do away entirely with the benefit to the public arising from competition between railroads. Railroads might be so multiplied between points that the competition would be ruinous, while competition to that extent would be of little benefit to the communities. Such, however, is not the case here presented. It is not possible, either for the State Commission or the Interstate Commission, to ascertain and enforce a reasonable rate either for passengers or freight in the way that can be ascertained by the establishment of competition. Such competition to a limited extent is therefore still an important factor in the enforcement of legal duties owing by public service corporations to the public, notwithstanding the supervision of these commissions.

One further objection is urged by the relators to the granting of this certificate. It seems that upon this road are specified 77 highway crossings, of which 49 are grade crossings. It is urged that the commissioner made no determination whether these crossings shall be at grade, or above or below grade, and that such determination must necessarily be made at the same time with the issuance of this certificate. This objection is based upon the reading of section 60 of the railroad law (Laws 1897, p. 794, c. 754). This section provides in the first place that steam surface roads thereafter built must be so constructed "as to avoid all public grade crossings whenever practicable so to do." It then provides that, whenever application is made under section 59 (Laws 1895, p. 317, c. 545), there shall be filed with the board a map showing the streets, avenues, and highways proposed to be crossed, and that the said board "shall determine whether such crossing shall be under or over the proposed road, except where such board shall determine such method of crossing to be impracticable." The section then reads:

"Whenever application is made under this section to determine the manner of crossing, the said board shall designate a time and place, when and where a hearing will be given to such railroad company, and shall notify the municipal corporation having jurisdiction over such streets, avenues or highways proposed to be crossed by the new railroad. The said board shall also give public notice of such hearing in at least two newspapers, published in the locality affected by the application, and all persons owning land in the vicinity of the proposed crossings shall have the right to be heard. The decision of the said board rendered in any proceeding under this section shall be communicated within twenty days after final hearing to all parties to whom notice of a hearing in said proceedings was given, and who appeared at said hearing by counsel."

The first part of this section, read alone, would seem to make plausible the contention of the relator that the determination as to the manner of crossing the highways must be made at the time that the certificate of public convenience and necessity is granted. The latter

part of the section, however, would seem to make clear that such procedure was not intended, and that the nature of the crossing is to be determined in some subsequent proceeding. That subsequent proceeding is provided for in the section itself, to whom notice shall be given, and what notice, when the decision shall be rendered, and who shall be notified thereof. If the necessity for a subsequent application were not clearly indicated in the section itself, the court should not, unless imperatively required, construe the statute to require the determination as to the manner of crossing in the same proceeding as the determination of the question of public convenience and necessity. A joint proceeding would be multifarious. The practicability of an overhead or under crossing of the highway depends upon the situation at that particular crossing. The facts bearing upon the practicability of such under or over passage are irrelevant to the inquiry as to the nature of any other crossing. The municipal authorities required to be notified are interested in no other crossings than those within their municipalities. Moreover, before the question can arise as to the manner of crossing, the main question must be first determined whether public convenience and necessity require the building of the road. The procedure, therefore, claimed to be necessary by the relator, would be cumbrous, illogical, and impracticable. The statute has never been so construed, either by the Railroad Commission or by the courts, and such a course of procedure has never been adopted by the Railroad Commission. The relator's objection, therefore, is in our judgment not well taken.

We are not holding, however, that the question of grade crossings is not a matter to be considered. The question of how many grade crossings are necessary upon the road is a matter not without influence in determination of the question as to the public convenience and necessity of the road. We are simply holding that the final determination of that question, as contemplated by section 60 of the railroad act, is to be made in a proceeding subsequent to the proceeding for the issuance of a certificate of public convenience and necessity. For the reasons stated, therefore, we are of opinion that the determination of the Railroad Commissioners should be confirmed.

Determination confirmed, with $50 costs and disbursements. All concur.

